UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIME WARNER CABLE INC. )
)
)
Plaintiff, )       Case No. 06 Civ. 14245 (LTS) (MHD)
)
v. )
)
)
DIRECTV, INC. )
)
)
Defendant. )

## MEMORANDUM IN SUPPORT OF TIME WARNER CABLE'S
## MOTION FOR A PRELIMINARY INJUNCTION

PATTERSON BELKNAP WEBB & TYLER LLP
Saul B. Shapiro (SS 5506)
Sarah E. Zgliniec (SZ 0206)
Scott W. Parker (SP 4721)
Catherine A. Williams (CW 0003)
Karen Lim (KL 7611)
1133 Avenue of the Americas
New York, New York 10036
Telephone 212-336-2000
Facsimile 212-336-2222

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

ARGUMENT ......................................................................................................................10

I.     Time Warner Cable Is Likely to Succeed On the Merits.......................................11

       A. DIRECTV's Revised Jessica Simpson Commercial....................................12

              1.   The Revised Jessica Simpson Commercial Is Literally False .........................12

              2.   The Revised Jessica Simpson Commercial Is Not Merely
                   Opinion or "Puffery".......................................................................................13

       B. DIRECTV's Website Demonstrative and Banner Ads Are Literally False................14

              1.   The Website Demonstrative and Banner Ads Present a False,
                   Distorted Depiction of Cable Television's Picture Quality .............................14

              2.   The Website Demonstrative Makes the Literally False Claim that
                   DIRECTV's HDTV Service Is Superior to Cable HDTV ................................17

II.    Time Warner Cable Will Suffer Irreparable Injury Absent Preliminary Relief....................17

III.   Time Warner Cable Is Entitled to Preliminary Injunctive Relief That Includes
       Corrective Advertising.............................................................................................19

CONCLUSION....................................................................................................................21

# TABLE OF AUTHORITIES

## CASES

American Home Products Corp. v. Johnson & Johnson,
654 F. Supp. 568 (S.D.N.Y. 1987) ..........................................................................20

Avis Rent A Car Sys., Inc. v. Hertz Corp.,
782 F.2d 381 (2d Cir. 1986)...................................................................................11

Boule v. Hutton,
328 F.3d 84 (2d Cir. 2003)......................................................................................13

Castrol, Inc., v. Quaker State Corp.,
977 F.2d 57 (2d Cir. 1992)..........................................................................10, 18, 20

Coastal Comm'ns Corp. v. Adams/Laux Co., Inc.,
No. 96 Civ. 1369, 1996 WL 546880 (S.D.N.Y. Sept. 26, 1996).......................13, 14

Coca-Cola Co. v. Tropicana Products, Inc.,
690 F.2d 312 (2d Cir. 1982)....................................................................................11

H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,
No. 84 Civ. 0306, 1985 WL 9700 (S.D.N.Y. Jan. 10, 1985)....................................20

Johnson & Johnson-Merck Consumer Pharms. Co. v. SmithKline Beecham,
960 F.2d 294 (2d Cir. 1992)....................................................................................11

Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.,
348 F. Supp. 2d 165 (S.D.N.Y. 2004).........................................................11 n.2, 20

Linotype Co. v. Varityper, Inc.,
No. 89 Civ. 4747, 1989 WL 94338 (S.D.N.Y. Aug. 4, 1989) .........................19, 20

McNeil P.P.C., Inc. v. Bristol-Myers Squibb Co.,
938 F.2d 1544 (2d Cir. 1991)..................................................................................11

McNeil-PPC, Inc. v. Pfizer Inc.,
351 F. Supp. 2d 226 (S.D.N.Y. 2005)...............................................................10, 18

Procter & Gamble Pharms., Inc. v. Hoffmann-La Roche Inc.,
No. 06 Civ. 0034 (PAC), 2006 WL 2588002 (S.D.N.Y. Sept. 26, 2006) .........14 n.3

# TABLE OF AUTHORITIES con't

Page

S.C. Johnson & Son, Inc. v. Clorox Co.,
241 F.3d 232 (2d Cir. 2001)..............................................................................................*passim*

Schick Mfg., Inc. v. Gillette Co., 372 F. Supp. 2d 273 (D. Conn. 2005) ................................17, 18

SmithKline Beecham Consumer Healthcare, L.P. v.
Johnson & Johnson-Merck Consumer Pharms. Co.,
No. 01 Civ. 2775, 2001 WL 588846 (S.D.N.Y. 2001) ............................................................11

## STATUTES

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)...................................................................11

1333081v1

Plaintiff Time Warner Cable Inc. ("Time Warner Cable") respectfully submits this memorandum of law in support of its motion for a preliminary injunction against false advertising by DIRECTV, Inc. ("DIRECTV").

## PRELIMINARY STATEMENT

DIRECTV is engaged in a national advertising campaign in which it claims that its satellite service is superior to Time Warner Cable's cable service and attempts to persuade Time Warner Cable subscribers to switch to DIRECTV's satellite service. In a stipulation so-ordered by the Court on December 12, 2006 (the "Stipulation and Order"), DIRECTV agreed to discontinue much of the contested advertising pending final resolution of this action. However, DIRECTV persists in airing certain additional advertisements that are demonstrably false, causing Time Warner Cable irreparable harm.

First, DIRECTV is currently airing a revised version of one of the advertisements that was the subject of the Stipulation and Order, which makes the same false claims as the original version. The original ad, the "Original Jessica Simpson Commercial," was a thirty-second television spot featuring (1) claims by the singer and actress Jessica Simpson that DIRECTV's high-definition television ("HDTV") service offered picture quality superior to that available from any other source, and (2) a claim by a narrator at the end of the commercial that "For picture quality that beats cable, you've got to get DIRECTV." In the Stipulation and Order, DIRECTV agreed to stop claiming that its HDTV service was presently superior to that of Time Warner Cable, or of cable providers generally. It also agreed to stop airing the Original Jessica Simpson Commercial, which made that very claim. Despite that agreement, DIRECTV is now running the exact same advertisement with a new narrator's tag-line (the "Revised Jessica

Simpson Commercial"), but without any alteration to Ms. Simpson's false statements regarding the alleged superiority of DIRECTV's HDTV service.

Second, DIRECTV is currently running a demonstrative on its website (the "Website Demonstrative") which falsely depicts the picture quality of cable television. In the Stipulation and Order, DIRECTV agreed to stop running a radio commercial featuring sports journalist Frank Deford, which falsely portrayed cable service as no better than static. The Website Demonstrative does exactly the same thing that DIRECTV agreed not to do in the Frank Deford Commercial: it features a purported side-by-side comparison of the picture quality of DIRECTV's HDTV service – which is depicted as clear and sharp – and "OTHER TV" (defined by the website as "basic cable"), which is depicted as unwatchably blurry, pixelated, and distorted. DIRECTV makes similar claims in several "banner ads" appearing on other websites, which use similar graphics to those in the Website Demonstrative (the "Banner Ads").

DIRECTV's continuing false advertising is causing Time Warner Cable immediate and irreparable harm. The Revised Jessica Simpson Commercial, the Website Demonstrative, and the Banner Ads all encourage consumers to switch from cable to satellite. Once consumers make that decision, it is difficult for Time Warner Cable to convince them to switch back to Time Warner Cable's service. This difficulty arises because customers may have to pay for installation and equipment (such as receivers, remote controls, and satellite dishes that are installed on customers' roofs), and may also commit to a length of service contract with a satellite provider such that early termination of the service will subject them to expensive cancellation charges. Similarly, if customers choose satellite service at the outset, it is difficult for Time Warner Cable to convince them to switch to cable service.

2

Time Warner Cable is entitled to a preliminary injunction to prevent DIRECTV from continuing its false advertising campaign and causing Time Warner Cable irreparable harm.

## STATEMENT OF FACTS

### The Parties and Their Services

Time Warner Cable offers analog and digital cable television services to customers in many areas across the country. Time Warner Cable is the second-largest cable provider in the United States, with more than 13.4 million subscribers. (December 18, 2006 Declaration of Sam Howe In Support of Plaintiff's Motion for a Preliminary Injunction ("Howe Decl.") ¶ 8.) Cable operators like Time Warner Cable operate through franchises let by local government entities. (Id. ¶ 9.) In the areas in New York City in which Time Warner Cable is the franchisee (i.e., Manhattan, Western Brooklyn, Eastern and Western Queens, and Staten Island), the overwhelming majority of cable subscribers are customers of Time Warner Cable. (Id.)

DIRECTV is the primary competitor of Time Warner Cable in the areas in which Time Warner Cable operates. (Id.) Thus, when DIRECTV compares itself to "cable television" in markets serviced by Time Warner Cable, it is, in effect, comparing itself to Time Warner Cable.

Time Warner Cable offers analog and digital cable television services to its subscribers. Time Warner Cable's services comply with applicable FCC regulations governing picture quality. Time Warner Cable also offers its customers programming in HDTV. HDTV offers theater-like picture quality and sound and a wider screen than regular television. To receive this programming, customers must have a "high definition" television and a box to receive the HDTV signal. Like Time Warner Cable, DIRECTV offers its subscribers an HDTV

3

service. (December 18, 2006 Declaration of Ronald E. Boyer In Support of Plaintiff's Motion for a Preliminary Injunction ("Boyer Decl.") ¶¶ 10-13; Howe Decl. ¶¶ 5-7.)

## DIRECTV's Three-Pronged False Advertising Campaign

DIRECTV has embarked on a pervasive false advertising campaign targeted at Time Warner Cable. The campaign has unfolded as a three-pronged attack against the most important attributes of Time Warner Cable's cable television services: Time Warner Cable's programming, the picture quality of its services overall, and the picture quality of its HDTV service.

## Prong One: DIRECTV's Football Advertisements

The first prong of DIRECTV's campaign was to run print advertisements targeting local fans of professional football, claiming that Time Warner Cable subscribers would not be able to see their local National Football League ("NFL") teams play certain games unless they subscribed to DIRECTV. In its advertisements, DIRECTV claimed that since Time Warner Cable had decided not to carry the NFL Network – a NFL-dedicated channel carried by DIRECTV – eight regular season NFL games could only be viewed on DIRECTV. DIRECTV ran these ads in markets such as New York City, Green Bay, and Cincinnati, where loyalty to the local football team would likely drive consumer purchasing decisions. (Howe Decl. ¶ 10.) In fact, the ads were untrue; each of the eight NFL games at issue was scheduled to be simultaneously broadcast to the teams' local fans by local television stations, and those broadcasts would also be telecast to local cable subscribers by cable providers. Time Warner Cable is a major cable supplier in several of the local markets affected by these ads. (Id. ¶¶ 11-12.)

4

On November 27, 2006, Time Warner Cable obtained a written agreement from DIRECTV to stop making these false claims. (December 18, 2006 Declaration of Saul B. Shapiro In Support of Plaintiff's Motion for a Preliminary Injunction ("Shapiro Decl.") ¶ 4 & Ex. B.) DIRECTV broke that agreement by running several additional false ads on November 30, and yet another on December 7. (Id. ¶¶ 7, 10; Howe Decl. ¶ 13.) Time Warner Cable accordingly brought suit on December 7. Thereafter, DIRECTV entered into the Stipulation and Order enjoining it for the pendency of this action from continuing to run these false ads and from repeating the false claims they contain. (Shapiro Decl. ¶ 11 & Ex. D (Stipulation and Order).)

**Prong Two: DIRECTV's HDTV Advertisements**

Second, DIRECTV's campaign also includes national television advertisements that falsely claim that the picture quality of its HDTV service is superior to the picture quality provided by other HDTV services, including Time Warner Cable.

The original campaign featured two thirty-second commercials. The first starred Jessica Simpson (the "Original Jessica Simpson Commercial"). Ms. Simpson, dressed as her waitress character in the Dukes of Hazzard movie, asked a group of restaurant customers, "Are you ready to order?" She then said:

> Hey, 253 straight days in the gym to get this body and you are not going to watch me on DIRECTV HD? **You're just not going to get the best picture out of some fancy big screen TV without DIRECTV. It's broadcast in 1080i.** I totally don't know what that means, but I want it.

(emphasis added) After Ms. Simpson finished speaking, a narrator stated: **"For picture quality that beats cable, you've got to get DIRECTV"** (emphasis added). A disclaimer then appeared on the screen, stating: "Based on independent study of standard cable customers." (Howe Decl. ¶ 16 & Ex. F, file titled "Jessica Simpson Commercial.mpg".)

5

The second commercial featured the set and cast of the original Star Trek television show (the "William Shatner Commercial"). In it, two space ships appeared while ominous music played. Walter Koenig, the actor who played Ensign Pavel Chekhov in Star Trek, asked, "Shall we raise our shields, Captain?" Mr. Shatner, who played Captain James T. Kirk on Star Trek, entered and said, "At ease, Mr. Chekhov." Mr. Shatner then stated:

> Again with the shields. I wish that he would just relax and enjoy the amazing picture clarity of the DIRECTV HD that we just hooked up. With what Star Fleet just ponied up for this big screen TV, **settling for cable would be illogical**.

(emphasis added) After Mr. Shatner finished speaking, a narrator stated: **"For picture quality that beats cable, you've got to get DIRECTV"** (emphasis added). (Howe Decl. ¶ 17 & Ex. F, file titled "William Shatner Commercial.ram".)

The claims made in both the Original Jessica Simpson Commercial and the William Shatner Commercial were false. DIRECTV HD does not deliver the "best" picture, nor is it the only source of 1080i screen resolution, nor does it "beat" high-definition cable. Rather, DIRECTV's HDTV service is at best equivalent to other HDTV services, such as Time Warner Cable's, in all of these respects. This is because the networks that broadcast in high definition set the screen resolution for their own programming,[1] and HDTV service providers like DIRECTV and Time Warner Cable merely pass that programming along to consumers without altering its screen resolution. (Boyer Decl. ¶¶ 6, 8.) In fact, DIRECTV is aware of this and has stipulated that it will not run any advertisements claiming that the picture quality of its present

---

[1] The broadcast standard for when a picture may be considered "high definition" is not set by DIRECTV or Time Warner Cable, but by the Advanced Television Systems Committee ("ATSC"), an outside organization. (Boyer Decl. ¶ 4.) According to the ATSC Standard, for a picture to be considered "high definition," the screen resolution must be either 720p or 1080i. (Id. ¶ 5 & Ex. B (ATSC Standard) at 24.) The "p" and "i" designations stand for "progressive" and "interlaced." In the progressive format, the full picture updates every sixtieth of a second, while in the interlaced format, half of the picture updates every sixtieth of a second. The higher the "i" or "p" number, the better the resolution. By way of comparison, analog signals are telecast at a much lower resolution, typically 480p or 480i. (Id. ¶ 5.)

6

HDTV service is superior to Time Warner Cable's present HDTV service. (Ex. D to Shapiro Decl. (Stipulation and Order) at ¶ 2(d).)

On November 28 and 29, 2006, DIRECTV agreed to stop running the William Shatner Commercial and the Original Jessica Simpson Commercial. (Shapiro Decl. ¶ 5.) DIRECTV broke this agreement, however, and continued to run the Original Jessica Simpson Commercial through December 3. (Id. ¶ 8; Howe Decl. ¶ 18.) After Time Warner Cable brought suit, DIRECTV stipulated to discontinue the William Shatner Commercial and the Jessica Simpson Commercial with the original narrator's tag-line. (Shapiro Decl. ¶ 11 & Ex. D (Stipulation and Order) ¶¶ 1(f)-(g).)

DIRECTV is now airing a revised version of the Jessica Simpson Commercial (the "Revised Jessica Simpson Commercial"). In this new 30-second spot, the narrator's original statement that "For picture quality that beats cable, you've got to get DIRECTV" has been replaced with a new line: "For an HD picture that can't be beat, get DIRECTV." (Howe Decl. ¶ 19 & Ex. F, file titled "Revised Jessica Simpson Commercial.mpg".) However, the new ad continues to include Ms. Simpson's original false statements that DIRECTV HD provides picture quality unavailable from any other source. This claim is patently false.

### Prong Three:  DIRECTV's Advertisements Attacking Cable's Picture Quality

Finally, DIRECTV has also commenced a multi-part advertising campaign that falsely claims that cable service delivers "sub-par," blurry, distorted, pixelated picture quality and reception marred by constant static.

The first part of DIRECTV's attack on cable's quality was a radio advertisement narrated by sports journalist Frank Deford (the "Frank Deford Commercial"). Mr. Deford told listeners:

I'm Frank Deford, veteran sports journalist. I usually report on athletes, but today I want to talk about the spectator. Nothing compares to the sights and sounds of watching a game in the flesh, but a close second place is a flat screen TV hooked up to DIRECTV HD, the superior picture quality is unparalleled. Or you could watch your favorite team on cable . . .

This statement was then followed by static. After that, Mr. Deford stated:

Cable's sub par picture quality [static] not as clear as DIRECTV [static] just wasting [static] flat screen [static] better off just [static] old fashioned [static] rabbit ears to your [static]. Nothing compares to DIRECTV HD.

An unidentified announcer then stated:

If you're hooking your flat screen TV up to cable, you're just not getting the best picture. DIRECTV broadcasts more sports in hi-def than anyone else including over 200 NFL games every season, and the best of the NBA and NHL, all in crystal clear HD.

Mr. Deford then stated:

For information on cable, call [static]. But for the ultra-sharp detail of DIRECTV, call 1-800-DIRECTV or visit DIRECTV.com.

The Frank Deford Commercial was specifically broadcast to football fans during football games on sports radio stations. (Howe Decl. ¶ 21 & Ex. F, file titled "DTB65260.ram".)

DIRECTV also began including similar messages on its website. In the Website Demonstrative found at http://www.directv.com/DTVAPP/global/contentPageNR.jsp?assetId= P4020040, DIRECTV purports to compare the picture quality of DIRECTV's HDTV service with "OTHER TV" – which the text of the website identifies as "basic cable." The demonstrative shows a picture of several professional football players being tackled during a game. One side of the picture is clear and sharp, and bears the label "DIRECTV." The other side of the picture is grossly distorted to look blurry and pixelated, and is labeled "OTHER TV." Text then appears, reading: "If you're hooking up your high-definition TV to basic cable, you're not getting the best picture on every channel. For unparalleled clarity, you need DIRECTV HD.

8

You'll enjoy 100% digital picture and sound on every channel and also get the most sports in HD – including all your favorite football games in high definition with NFL SUNDAY TICKET." (Howe Decl. ¶ 24 & Ex. F, file titled "DirecTV Multiple Players.wmv".)

DIRECTV also began running new "banner ads" with the same false message. For instance, on the website for PC World Magazine (www.pcworld.com), DIRECTV ran a banner ad that begins by displaying a blurry, pixelated background with text that reads "Source Matters." After about one second, the DIRECTV "banner ad" is divided into two sides by a white line. The side labeled "OTHER TV" screen contains the same grossly distorted background that appeared at the beginning of the ad, while the side labeled "DIRECTV" depicts a crystal-clear image of two women snorkeling underwater. It shows the DIRECTV logo and, next to that logo, says "Find out why DIRECTV's picture beats cable." This banner ad is shown below:



The "DIRECTV" screen allows users to click on an icon that reads "SPECIAL OFFER – Get up to $100 cash back – LEARN MORE." Upon clicking this icon, users were routed to the HDTV section of DIRECTV's website: http://www.directv.com/DTVAPP/global/ secondaryIndex.jsp? assetId=900024. Other similar DIRECTV Banner Ads made the same claim. (Howe Decl. ¶¶ 25-26 & Ex. F, files titled "directtv-football.swf" and "directtv-snorkel.swf".)

The Frank Deford Commercial, the Website Description, and the Banner Ads are false. Just as there was no evidence to support DIRECTV's contention in the Frank Deford Commercial that cable customers (including Time Warner Cable customers) would get nothing but static while attempting to watch their favorite sports teams, there is nothing to support the

9

Website Description and Banner Ads' depiction of the picture quality of "OTHER TV" – defined as "cable" – as unwatchably blurry, distorted, and overly pixelated. In fact, Time Warner Cable's cable service provides clear picture quality that is neither blurry, distorted nor overly pixelated. (Boyer Decl. ¶ 9.)

On November 29, 2006, DIRECTV agreed to stop running the Frank Deford Commercial in any form – an agreement it broke by continuing to air the commercial through December 3. (Shapiro Decl. ¶ 5; Howe Decl. ¶¶ 21 & 23.) Ultimately, DIRECTV stipulated that it would discontinue the Frank Deford Commercial, and that it would disable the link on the Banner Ads that routed consumers to the HDTV section of the DIRECTV website. (Shapiro Decl. ¶ 11 & Ex. D (Stipulation and Order) ¶¶ 1(h)-(i).)

Although DIRECTV agreed to stop running the Frank Deford Commercial likening cable television's picture quality to static and distortion, the grossly distorted depiction of cable television as unwatchably blurry and pixelated continues in its Website Demonstrative and in its Banner Ads.

## ARGUMENT

The standard for granting a preliminary injunction in this Circuit is well-established. The movant must show: (1) irreparable harm if relief is denied and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the party requesting the preliminary relief. See, e.g., Castrol, Inc., v. Quaker State Corp., 977 F.2d 57, 62 (2d Cir. 1992); McNeil-PPC, Inc. v. Pfizer Inc., 351 F. Supp. 2d 226, 246 (S.D.N.Y. 2005). This standard is satisfied here.

10

# I.   TIME WARNER CABLE IS LIKELY TO SUCCEED ON THE MERITS

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), established a federal cause of action for false advertising.  The statute provides:

> (1) Any person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

A plaintiff can show likelihood of success on a Lanham Act claim by showing that the advertisement in question is "literally" or facially false as a factual matter.[2]  See Johnson & Johnson-Merck Consumer Pharms. Co. v. SmithKline Beecham Corp., 960 F.2d 294, 297 (2d Cir. 1992); SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharms. Co., No. 01 Civ. 2775(DAB), 2001 WL 588846, at *6 (S.D.N.Y. June 1, 2001).  Where an ad is shown to be literally false, the court may enjoin its use without reference to extrinsic evidence of the "advertisement's impact on the buying public."  McNeil-P.P.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1549 (2d Cir. 1991) (quoting Coca-Cola Co. v. Tropicana Prods., Inc., 690 F.2d 312, 317 (2d Cir. 1982)).

In determining whether an advertisement is facially false, a court must heed the principle that "text must yield to context."  S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d. Cir. 2001) (quoting Avis Rent A Car Sys., Inc. v. Hertz Corp., 782 F.2d 381, 385 (2d Cir. 1986)).  The court should "consider the advertisement in its entirety and not . . . engage in disputatious dissection."  Id. (quoting same).  Moreover, the court should look beyond the

---

[2] The standards for analysis of false advertising claims under New York law are the same as under the Lanham Act.  Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., 348 F. Supp. 2d 165, 177 n.6 (S.D.N.Y. 2004).

spoken words and consider "the visual images in a commercial to assess whether it is literally false." Id.

### A. DIRECTV's Revised Jessica Simpson Commercial

#### 1. The Revised Jessica Simpson Commercial Is Literally False

Like the Original Jessica Simpson Commercial, the Revised Jessica Simpson Commercial makes the false claim that DIRECTV's HDTV service is superior to any other HDTV provider's service, including Time Warner Cable's. In fact, the image quality delivered by the two services is equivalent. Indeed, in the Stipulation and Order, DIRECTV has agreed not to claim that its HD picture quality is superior. (Shapiro Decl. Ex. D (Stipulation and Order) ¶ 2(d).) As described above, Time Warner Cable and DIRECTV use exactly the same screen resolution for their HDTV telecasts (1080i and 720p), because the networks that broadcast in high definition set the screen resolution for their own programming, and HDTV service providers like DIRECTV and Time Warner Cable merely pass that programming along to consumers. (Boyer Decl. ¶¶ 6, 8.)

Nonetheless, DIRECTV makes the same false claim in the Revised Jessica Simpson Commercial that it did in the original version. In each commercial, Ms. Simpson, after questioning the wisdom of a consumer watching her new body on anything other than DIRECTV HD, states: "**You're just not going to get the best picture** out of some fancy big screen TV without DIRECTV" (emphasis added), and then immediately continues by stating, "It's broadcast in 1080i." These statements together unequivocally convey to the viewer that only DIRECTV can deliver the "best" picture for a big screen television, because only DIRECTV broadcasts in 1080i. The slight alteration in the narrator's tag line – from the original "For picture quality that beats cable, you've got to get DIRECTV" to the revised "For an HD picture that can't be beat, get DIRECTV" – does not diminish the impact of Ms. Simpson's statements.

12

Considering the advertisement as a whole, as the Second Circuit has directed, the Revised Jessica Simpson Commercial conveys the unmistakable message that DIRECTV, and only DIRECTV, provides the best available picture quality for a "fancy big" high definition screen. But as shown above, DIRECTV's claim to be superior is false.

## 2. The Revised Jessica Simpson Commercial Is Not Merely Opinion or "Puffery"

DIRECTV cannot avoid liability by asserting that its superiority claim in the Revised Jessica Simpson Commercial is a non-actionable statement of opinion or "puffery." Pure non-actionable statements of opinion are those that "could not reasonably be seen as stating or implying provable facts about a competitor's goods or services." Boule v. Hutton, 328 F.3d 84, 92 (2d Cir. 2003) (citation and internal quotation marks omitted). Non-actionable statements of puffery involve "outrageous generalized statements, not making specific claims, that are so exaggerated as to preclude reliance by consumers." Coastal Commc'ns Corp. v. Adams/Laux Co., No. 96 Civ. 1369, 1996 WL 546880, at *1 (S.D.N.Y. Sept. 26, 1996).

But Ms. Simpson's claims are not exaggerated, general, unreasonable, or hyperbole. Rather, they are specific, supported statements of false fact. Ms. Simpson claims that DIRECTV's HDTV picture quality cannot be matched, and immediately identifies the purported reason for this superiority: it is broadcast in 1080i resolution. In so stating, Ms. Simpson is not expressing an opinion or resorting to simple puffery tactics. Rather, she asserts an untrue statement about the HDTV cable services provided by Time Warner Cable and other cable providers, purports to support that statement with false facts, and makes a specific statement of DIRECTV's superiority. See Coastal Commc'ns Corp., 1996 WL 546880, at *2 (a specific statement is not puffery because it is something on which a consumer could rely).

13

The Revised Jessica Simpson Commercial closes with a narrator's statement that "For an HD picture that can't be beat, get DIRECTV." While that statement, if standing alone, might be akin to puffery, it is not mere puffery or opinion when paired with Ms. Simpson's overt and purportedly factually-based superiority claims. As it is, the narrator's new statement amplifies and enhances Ms. Simpson's false claim that DIRECTV's HDTV service is superior to other HDTV services.

## B. DIRECTV's Website Demonstrative and Banner Ads Are Literally False

The Website Demonstrative and Banner Ads are both literally false because they present a grossly distorted depiction of the picture quality provided by cable services such as Time Warner Cable.[3] Further, like the Revised Jessica Simpson Commercial, the Website Demonstrative makes the literally false claim that DIRECTV's HDTV service is superior to any other HDTV provider's service, including Time Warner Cable's.

### 1. The Website Demonstrative and Banner Ads Present a False, Distorted Depiction of Cable Television's Picture Quality

Both the Website Demonstrative and the Banner Ads present an exaggerated, distorted depiction of cable television's picture quality. As established by the Second Circuit in S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232 (2d Cir. 2001), visual exaggeration without any suggestion that the exaggeration is atypical makes DIRECTV's advertisements literally false.

In S.C. Johnson, the advertisement at issue showed an image of two upside-down resealable storage bags (one a Clorox Glad bag and the other an S.C. Johnson Ziploc bag) filled

---

[3] Courts in this circuit have recognized that websites constitute advertisements for purposes of the Lanham Act. See, e.g., Procter & Gamble Pharms., Inc. v. Hoffmann-LaRoche Inc., No. 06 Civ. 0034(PAC), 2006 WL 2588002, at *27 (S.D.N.Y. Sept. 26, 2006) (treating defendant's website as advertisement for purposes of Lanham Act false advertising claim).

with water and inhabited by goldfish. Id. at 234-35. The Glad bag did not leak at all, whereas the Ziploc bag was shown leaking at a rapid rate, and the goldfish in the Ziploc bag appeared to be in great distress. Id. Challenging the depiction, the plaintiff showed that a significant percentage of Ziploc bags would not leak at all when filled with water and turned upside-down, and that the vast majority of the bags would leak at a less rapid rate than depicted in the commercial. Id. at 235.

The district court concluded that the advertisement was "literally false in respect to its depiction of the flow of water out of the [Ziploc] bag." Id. (quoting district court opinion, S.C. Johnson & Son, Inc. v. Clorox Co., No. 99 Civ. 11079 (TPG), 2000 WL 122209, at **1-3 (S.D.N.Y. Feb. 1, 2000)). Specifically, the court found that the advertisement "impermissibly exaggerate[d] the facts in respect to the flow of water . . . out of a [Ziploc] bag" because most bags did not leak so rapidly. Id. (quoting same). The "problem" with the advertisement – which made the advertisement literally false – was "that there [was] no depiction in the visual images to indicate anything else than the fact that the type of fairly rapid and substantial leakage shown in the commercial is simply characteristic of that kind of bag." Id. (quoting same). The Second Circuit affirmed the district court's decision, agreeing that the advertisement "falsely depicts the risk of leakage for the vast majority of [Ziploc] bags." Id. at 239.

15

The <u>S.C. Johnson</u> court could just have easily been describing the advertisements at issue here, which "impermissibly exaggerate[]" the possibility that cable television's picture quality will be distorted, blurred, and pixelated. The Website Demonstrative and Banner Ads (one of which is shown to the right) each begin with a picture that is so blurred and disrupted that the image is difficult to identify. A white line then appears and divides the screen into two halves, with one side labeled "OTHER TV" and the other side labeled "DIRECTV." The "OTHER TV" side of the picture remains blurry and pixelated, while the portion labeled "DIRECTV" becomes clear. By moving the cursor over the ad, consumers can move the white line back and forth; if they move the line in the "DIRECTV" direction to increase the size of the "Other TV" image, more of the picture becomes burry and pixelated, but if they move it in the opposite direction, more of the picture becomes clear. (Howe Decl. ¶¶ 25-26 & Ex. F thereto.)



In stark contrast to the "Other TV" image depicted in DIRECTV's advertisements, Time Warner Cable's cable picture quality is ordinarily sharp, clear and undistorted. Time Warner Cable's services comply with applicable FCC regulations concerning picture quality. (Boyer Decl. ¶ 9-14.) Indeed, the images a customer would ordinarily see using Time Warner Cable's cable service look nothing like the distorted images labeled "Other TV" in the Banner Ads. (<u>Id.</u> ¶¶ 9, 16.) Therefore, DIRECTV's advertisements are literally false. There is "no depiction in the visual images" of either the Website Demonstrative or Banner Ads "to

indicate anything else than the fact that the type of" blurring and pixelation "shown in the commercial is simply characteristic of" cable service. See <u>S.C. Johnson</u>, 241 F.3d at 235; <u>see also Schick Mfg., Inc. v. Gillette Co.</u>, 372 F. Supp. 2d 273, 285 (D. Conn. 2005) (granting preliminary injunction where defendant "distorted an inherent quality of its product" through graphics and animation in a commercial, thereby conveying a literally false message).

### 2. The Website Demonstrative Makes the Literally False Claim that DIRECTV's HDTV Service Is Superior to Cable HDTV

Like the Revised Jessica Simpson Commercial, the Website Demonstrative also makes the literally false claim that the best picture quality can only be obtained using DIRECTV's HD service. At the end of the Website Demonstrative, the following text appears: "If you're hooking up your high-definition TV to basic cable, you're not getting the best picture on every channel. For unparalleled clarity, you need DIRECTV HD." However, as shown above, it is simply not true that DIRECTV HD provides "unparalleled clarity"; Time Warner Cable's HDTV service provides an equally clear picture. (Boyer Decl. ¶¶ 6-8.) Further, DIRECTV agreed in the Stipulation and Order not to make such false superiority claims. (Shapiro Decl. Ex. D ¶¶ 1(i), 2(d).)

*　　*　　*

For all of the foregoing reasons, Time Warner Cable is highly likely to prevail on its claim that DIRECTV's Revised Jessica Simpson Commercial, Website Demonstrative, and Banner Ads are literally false, and thus on its claim that DIRECTV has violated the Lanham Act.

## II. TIME WARNER CABLE WILL SUFFER IRREPARABLE INJURY ABSENT PRELIMINARY RELIEF

The second requirement for obtaining preliminary relief – irreparable harm if relief is denied – is also met here because Time Warner Cable will face irreparable injury

through damage to its reputation, loss of goodwill, and loss of customers unless DIRECTV is preliminarily enjoined from running the false advertisements at issue here.

Irreparable harm is presumed where the advertisements at issue are literally false and draw a direct comparison to the plaintiff. <u>Castrol</u>, 977 F.2d at 62. Here, the Revised Jessica Simpson Commercial, Website Demonstrative, and Banner Ads are both literally false and directly comparative to Time Warner Cable. Each of these ads draws a comparison between DIRECTV and "cable." While a specific cable operator is not explicitly named in the ads, Time Warner Cable is the nation's second largest cable provider. Furthermore, there can be no doubt that, in every market where Time Warner Cable operates, "cable" *means* Time Warner Cable. Because cable providers operate pursuant to franchises let by local governments, Time Warner Cable is the primary cable provider wherever it operates. Thus, the comparisons to "cable" are not non-specific; in markets where Time Warner Cable operates, they are targeted comparisons to the cable services provided by Time Warner Cable. <u>See</u> <u>McNeil-PPC, Inc.</u>, 351 F. Supp. 2d at 250 (finding ads comparative, even where plaintiff was not mentioned by name, because plaintiff was market leader).

Even absent a presumption, there can be no doubt that Time Warner Cable – as a direct competitor of DIRECTV and a market leader in both HDTV and non-HD cable services (Howe Decl. ¶¶ 5-9) – will suffer irreparable harm to its reputation and customer base as a result of DIRECTV's false advertisements. As noted above, Time Warner Cable is the second largest cable provider in the United States and the major cable provider in numerous markets, including New York City. (<u>Id.</u> ¶ 8.) DIRECTV is Time Warner Cable's primary competitor in those markets. (<u>Id.</u> ¶ 9.) Therefore, false advertising that lures customers to subscribe to DIRECTV would inevitably reduce Time Warner Cable's subscription sales. (<u>Id.</u> ¶ 32.) <u>See also</u> <u>Schick</u>

18

Mfg., 372 F. Supp. 2d at 287 (fact that parties are "head-to-head competitors supports an inference" that a literally false advertisement will cause irreparable harm, even in the absence of consumer surveys or market research).

Moreover, once those customers are lost, the costs associated with obtaining DIRECTV service, and with switching back from satellite to cable service, mean that it will be extremely difficult for Time Warner Cable to regain those customers. DIRECTV customers may have to pay for installation and for equipment, such as satellite dishes (installed on customers' roofs), receivers and remote controls. Customers must also wait at home for their service to be installed and must have their home wired for the satellite service. Customers may also commit to a length of service agreement with a satellite provider such that early termination of the service will subject them to expensive cancellation charges. Thus, once customers choose satellite over cable, it is difficult for Time Warner Cable to convince them to switch to Time Warner Cable's cable service. (Howe Decl. ¶ 33.)

Because Time Warner Cable faces irreparable harm due to loss of customers and damage to its reputation based on DIRECTV's false statements about Time Warner Cable's picture quality and HDTV service, the Court should grant the requested preliminary relief here.

## III. TIME WARNER CABLE IS ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF THAT INCLUDES CORRECTIVE ADVERTISING

Courts have broad discretion to fashion appropriate remedies for false advertising. Linotype Co. v. Varityper, Inc., No. 89 Civ. 4747 (MJL), 1989 WL 94338, at *3 (S.D.N.Y. Aug. 4, 1989). "The relief ordered should be oriented toward eliminating the false nature of the offending advertisement, as well as the confusion it engenders in the minds of consumers." Id. The relief typically ordered on a motion for preliminary injunction in false advertising cases, and clearly called for here, is an injunction barring DIRECTV from (i) continuing to air the Revised

Jessica Simpson Commercial, maintaining the Website Demonstrative on its website, and running the Banner Ads described above, and (ii) making any other false claims that Time Warner Cable, or cable generally, provides picture quality that is blurry, pixelated, and distorted. See, e.g., Castrol, Inc., 977 F.2d at 65 (affirming district court's order enjoining defendant from "distributing any advertisement" claiming that its product was superior); Am. Home Prods. Corp. v. Johnson & Johnson, 654 F. Supp. 568, 591 (S.D.N.Y. 1987) (stating that injunction will issue to prevent continuation of advertising practices held to be false and misleading).

Furthermore, this Court should require DIRECTV to engage immediately in corrective advertising – a remedy that courts in this district have also recognized is appropriate in the preliminary injunction posture to undo the confusion or deception caused by a defendant's misleading advertisements. See Linotype, 1989 WL 94338, at *3 (ordering corrective advertising on plaintiff's motion for preliminary injunction); H.L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc., No. 84 Civ. 0306, 1985 WL 9700, at **4-5 (S.D.N.Y. Jan. 10, 1985) (ordering corrective advertising on preliminary injunction motion when one defendant's false advertising identified one of the plaintiffs and unequivocally linked that plaintiff to its false claim); see also Johnson & Johnson Vision Care, Inc., 348 F. Supp. 2d at 184-85 (granting permanent injunction and ordering defendant to disseminate corrective written communications to the recipients of its original misleading promotional material).

Here, DIRECTV's Revised Jessica Simpson Commercial, Website Demonstrative, and Banner Ads make false, disparaging and unmistakable comparisons to Time Warner Cable, and Time Warner Cable is presumptively irreparably harmed as a result of DIRECTV's false claims. Therefore, as part of its preliminary injunction order, this Court

20

should direct DIRECTV to engage in corrective advertising to remedy the harm its false

advertisements have caused to Time Warner Cable.

## **CONCLUSION**

For all the foregoing reasons, Time Warner Cable's motion for a preliminary

injunction should be granted.

New York, New York
December 18, 2006

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By:

Saul B. Shapiro (SS 5506)
Sarah E. Zgliniec (SZ 0206)
Scott W. Parker (SP 4721)
Catherine A. Williams (CW 0003)
Karen Lim (KL 7611)
1133 Avenue of the Americas
New York, New York 10036
Telephone 212-336-2000
Facsimile 212-336-2222

*Attorneys for Plaintiff*

Of counsel:
Michael W. Quinn, Esq.
Time Warner Cable Inc.

21