UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIME WARNER CABLE INC.,

            Plaintiff,

     v.

DIRECTV, INC.,

            Defendant.

Case No. 06 Civ. 14245 (LTS)(MHD)

**DIRECTV, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
THE COURT TO REQUIRE TIME WARNER CABLE INC. TO POST A BOND**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS...........................................................................................1

ARGUMENT...............................................................................................................2

TWC IS REQUIRED TO POST AN ADEQUATE BOND TO PROTECT DIRECTV IF
IT WAS WRONGFULLY ENJOINED .......................................................................2

    A.    DIRECTV Has Already Incurred Significant Out-of-Pocket Costs in
    Complying With The Preliminary Injunction.........................................4

    B.    DIRECTV Will Also Sustain Significant Losses In Terms of Its
    Competitive Advantage In The Marketplace........................................5

CONCLUSION ...........................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Interlink Int'l Fin. Servs., Inc. v. Block,
   145 F. Supp. 2d 312 (S.D.N.Y. 2001) ................................................................3

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,
   290 F.3d 578 (3d Cir. 2002) ............................................................................3

Philip Morris, Inc. v. Star Tobacco Corp.,
   879 F. Supp. 379 (S.D.N.Y 1995) ...................................................................3

## Statutes

Federal Rules of Civil Procedure

   Rule 65.....................................................................................................1, 3, 5, 6

## Other Authorities

13 Moore's Federal Practice 65-94.1 (3d ed. 1997).........................................................3

Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc.
   § 2954 (2d ed. 1987 & Supp. 2006) ...............................................................3

## Preliminary Statement

The Court should require plaintiff Time Warner Cable Inc. ("TWC") to post a bond in the amount of $1 million as security for the adverse economic impact DIRECTV, Inc. ("DIRECTV") will experience as a result of the February 5, 2007 Preliminary Injunction. Rule 65 of the Federal Rules of Civil Procedure requires the posting of a bond anytime a preliminary injunction issues in order to protect the defendant's interests in the event the defendant is found to have been wrongfully restrained. The Court issued its Order and Memorandum Opinion on February 5, 2007, granting TWC's First Motion for a Preliminary Injunction (the "First Motion") and issuing the Preliminary Injunction. In accordance with Federal Rule of Civil Procedure 65, DIRECTV respectfully requests that the Court require TWC to post a bond of $1 million as a security to cover the harm to DIRECTV in the event it is determined that the DIRECTV was wrongfully restrained.

## Statement of Facts

On December 7, 2006, TWC filed its Complaint against DIRECTV in this action. On December 18, 2006, TWC filed the First Motion asking the Court to enjoin DIRECTV from distributing three types of DIRECTV's advertisements: (1) a television commercial featuring Jessica Simpson playing the character Daisy Duke that she portrayed in the movie The Dukes of Hazzard (the "Simpson Commercial"); (2) "banner" Internet advertisements that depicted a picture with a clear half labeled "DIRECTV" and a highly pixilated half labeled "OTHER TV;" and (3) a portion of DIRECTV's website. On January 4, 2007, TWC filed a Supplemental Memorandum seeking to enjoin a commercial featuring William Shatner reprising the role of Captain Kirk that he played on the television show Star Trek (the "Shatner Commercial").

The Court heard oral argument on the First Motion on January 31, 2007. During the course of the hearing, the Court asked DIRECTV's counsel for the proper amount of a bond

should the Court decide to issue TWC's requested injunction. Because DIRECTV was uncertain at the time of the hearing what the scope of the injunction would be if the Court issued it, DIRECTV requested time to brief the amount of the bond once DIRECTV learned the final scope of the injunction. The Court issued its Order and Memorandum Opinion on February 5, granting TWC's First Motion and issuing the Preliminary Injunction. The Preliminary Injunction prohibits DIRECTV from disseminating in any location where TWC is present (1) any of the advertisements which were the subject of the motion; (2) "any other advertisement disparaging the visual or audio quality of TWC or cable high-definition television ("HDTV") programming as compared to that of DIRECTV or satellite HDTV programming"; or (3) "any other advertisement making representations that the service provided by Time Warner Cable or cable service in general, is unwatchable due to blurriness, distortion, pixellation or the like, or inaudible due to static or other interference." (Preliminary Injunction Order at 1-2, dated February 5, 2007).[1] In light of DIRECTV's compliance to date with the Preliminary Injunction, as well as anticipated harm in the future, DIRECTV can more accurately assess the economic impact of the Preliminary Injunction.

Argument

TWC IS REQUIRED TO POST AN ADEQUATE BOND TO PROTECT DIRECTV IF IT WAS WRONGFULLY ENJOINED

Federal Rule of Civil Procedure 65(c) requires the posting of a bond whenever a preliminary injunction issues. It provides, in pertinent part:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the

---

[1]  DIRECTV filed a Notice of Appeal on February 8, 2007.

2

payment of such costs and damages <u>as may be incurred by any party who is found to have been wrongfully enjoined or restrained</u>.

Fed. R. Civ. P. 65(c) (emphasis added).

The Rule is phrased in mandatory terms; once a court decides to grant relief under Rule 65, it <u>must</u> require a security from the applicant. Charles Alan Wright & Arthur R. Miller, <u>Fed. Prac. & Proc.</u> § 2954 (2d ed. 1987 & Supp. 2006). "The purpose of requiring security prior to issuance of an injunction . . . is to guarantee payment of costs and damages incurred by a party who is wrongfully enjoined or restrained." <u>Interlink Int'l Fin. Servs., Inc. v. Block</u>, 145 F. Supp. 2d 312, 314 (S.D.N.Y. 2001) (quoting 13 Moore's <u>Federal Practice</u> 65-94.1 (3d ed. 1997)). The issuance of preliminary injunctions that constrain "the forms and expressions of [a defendant's] efforts to market [its product] . . . have an adverse economic impact upon the defendant." <u>Philip Morris, Inc. v. Star Tobacco Corp.</u>, 879 F. Supp. 379, 389 (S.D.N.Y 1995) (requiring plaintiff to post a bond of $5 million as security to cover the adverse economic impact the defendant would experience in connection with a preliminary injunction barring certain advertisements); <u>see also</u> <u>Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.</u>, 290 F.3d 578, 585 (3d Cir. 2002) (noting that the district court had first approved a bond of $1 million and then later increased the amount of the to $9,800,000).

There are two distinct harms that DIRECTV has incurred and will continue to incur as a result of the Preliminary Injunction: (1) out-of-pocket expenses to modify its advertising materials in compliance with the Preliminary Injunction; and (2) the competitive disadvantage to DIRECTV by being enjoined from using the advertisements at issue.

**A.** **DIRECTV Has Already Incurred Significant Out-of-Pocket Costs in Complying With The Preliminary Injunction.**

Pursuant to the Preliminary Injunction, the Court prohibited, among other things, the use of pixilated or blurry images in advertisements that were intended to highlight and contrast DIRECTV's superior picture quality with that of analog cable. See Preliminary Injunction Order at 1-2. Prior to the issuance of the Preliminary Injunction, DIRECTV developed an advertising campaign around the slogan "SOURCE MATTERS." The campaign informs viewers that the purchase of a new HD television alone is insufficient to upgrade the consumer's viewing experience. Consumers must take the additional steps of ensuring that their television service provider offers programming in digital picture and sound and provides high definition. DIRECTV provides both to consumers.[2] As part of this campaign, DIRECTV developed a series of brochures similar to the website and banner ads enjoined by the Court, which depicted a picture with a clear half labeled "DIRECTV" and a highly pixilated half labeled "OTHER TV." DIRECTV had already printed 1 million copies of these brochures, which were to be shipped out to Consumer Electronic retailers for display in the DIRECTV section, prior to the issuance of the injunction. These brochures cost DIRECTV approximately $260,000 to prepare. As a result of the Preliminary Injunction, DIRECTV was unable to disseminate or use these brochures, resulting in a loss of $260,000.[3]

In addition to these brochures, DIRECTV had developed and printed approximately 675,000 tear-sheets, which depicted similar images and advertised DIRECTV's current subscriber offer. These tear-sheets were 8-1/2 x 11" sheets that were to be placed on retail

---

[2]   Declaration of Jon T. Gieselman, dated March 12, 2007 ("Gieselman Decl.") ¶ 5.

[3]   Id. at ¶ 6.

counters at consumer electronic stores to help consumers understand DIRECTV's programming, pricing, packaging and how it related to DIRECTV's current offer. These tear-sheets cost DIRECTV approximately $80,000 to print, customize, fulfill and ship. Because these tear sheets contained images that the Court enjoined DIRECTV from using, they were rendered unusable under the terms of the Preliminary Injunction.[4]

Finally, DIRECTV was required to make certain changes to its website and on-line banner ads pursuant to the Preliminary Injunction, which cost DIRECTV in excess of $4,000. Thus, DIRECTV's out-of-pocket cost to comply with the Preliminary Injunction to date is approximately $344,000.[5]

B.    <u>DIRECTV Will Also Sustain Significant Losses In Terms of Its Competitive Advantage In The Marketplace.</u>

In addition to the costs of approximately $344,000 that DIRECTV has already incurred, it will sustain additional damages if it is found to have been wrongfully enjoined. <u>See</u> Fed. R. Civ. P. 65(c) (requiring bond sufficient to cover damages that may be incurred by any party who is found to have been wrongfully enjoined or restrained).

As explained in its January 17, 2007 Opposition papers, DIRECTV firmly believes that the advertisements at issue truthfully depict and promote DIRECTV's superior all-digital picture quality over cable, and do not falsely state that DIRECTV's HD picture quality is superior to cable's HD picture quality.[6] In addition, DIRECTV contends that the website and banner advertisements, including the highly exaggerated pixilation contained in those advertisements,

---

[4]  <u>Id.</u> at ¶ 7.

[5]  <u>Id.</u> at ¶ 8.

[6]  <u>Id.</u> at ¶ 9.

did not make any false or actionable statements regarding cable's picture quality.[7] Although the Court disagreed, the relevant inquiry on the bond determination is what damages DIRECTV would incur if it is later determined that DIRECTV was wrongfully enjoined. See Fed. R. Civ. P. 65(c).

As a result of the Preliminary Injunction, DIRECTV has been forced to modify its entire "SOURCE MATTERS" advertising campaign. In addition to the costs noted above, this modification requires the investment of additional resources in the form of time and creative energy, to develop new concepts and advertisements to support this campaign.[8]

Moreover, because the Preliminary Injunction prohibits DIRECTV from effectively demonstrating its superior picture quality over that of cable by means of a graphic depiction, it is placed at a disadvantage vis-à-vis its cable competitors. DIRECTV is limited in its ability to demonstrate in advertisement form the significant contrast between its 100% digital picture quality, with the admittedly inferior picture quality of analog cable.[9] Although it is difficult to quantify this harm, it is harm nonetheless.

Finally, the Preliminary Injunction has created substantial uncertainty for DIRECTV, leaving it to question what is and is not permitted under the Order. This uncertainty results in additional costs and expenses.[10] For example, even though TWC admits the Simpson Commercial does not explicitly compare DIRECTV HD to cable HD, see First Am. Compl. ¶ 67, and in fact, does not even mention cable or its high-definition picture quality at all, the Court

---

[7] Id.

[8] Id. at ¶ 10.

[9] Id. at ¶ 11.

[10] Id. at ¶ 12.

concluded that these advertisements made the literally false statement that DIRECTV's high-definition picture quality was superior to cable's high-definition picture quality and enjoined DIRECTV from distributing "any other advertisement disparaging the visual or audio quality of TWC or cable high-definition television ('HDTV') programming as compared to that of DIRECTV or satellite HDTV programming." Order at 1, dated February 5, 2007. The Court concluded that the overall message of the Simpson Commercial disparaged cable's high-definition picture quality.

If the injunction simply prevented DIRECTV from running the Simpson Commercial, or from making certain express statements within the commercial, DIRECTV would have a clear understanding of what it can and cannot do. However, based upon the prohibitions in the injunction, DIRECTV is now left to speculate as to what statements might be interpreted as disparaging TWC's HD picture quality services. This uncertainty creates additional harm for DIRECTV since it forces DIRECTV to restrict its advertising to an even greater degree than the injunction may require in order to clearly avoid running afoul of it. In addition, this uncertainty results in substantially more review (legal and otherwise) over every advertisement that might potentially be implicated by the terms of the injunction, extending the process and resulting in more time and resources spent on each advertisement.[11]

Although difficult to quantify the precise amount of additional harm DIRECTV will incur if it were wrongfully enjoined, DIRECTV conservatively estimates that harm to be well in excess of $600,000. This amount includes the competitive disadvantage by restricting DIRECTV's ability to advertise, as well as the additional resources that must be expended developing and reviewing new advertisements that do not risk being interpreted in a manner

inconsistent with the injunction.[12]  Consequently, DIRECTV requests a bond of no less than $1 million.

## Conclusion

For the foregoing reasons, DIRECTV requests that the Court require TWC to post a bond in the amount of no less than $1 million.

DATED:  March 12, 2007

QUINN EMANUEL URQUHART OLIVER &
HEDGES, LLP

By *Michael E. Williams /vR.*

Michael E. Williams (pro hac vice)
865 South Fugueroa Street, 10th Floor
Los Angeles, CA  90017
(312) 443-3251 (phone)
(312) 443-3100 (fax)

--and--

Marc L. Greenwald (MG-8137)
Jessica A. Rose (JR-4300)

51 Madison Ave, 22nd Floor
New York, New York 10010
Phone: (212) 849-7000
Fax: (212) 849-7100

Attorneys for DIRECTV, Inc.

---

[11]  Id.

[12]  Id. at ¶ 13.