UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TIME WARNER CABLE INC.<br><br>Plaintiff,<br><br>v.<br><br>DIRECTV, INC.<br><br>Defendant. | ) | Case No. 06 Civ. 14245 (LTS) (MHD) |

**MEMORANDUM IN OPPOSITION TO DIRECTV INC.'S MOTION FOR THE COURT TO REQUIRE TIME WARNER CABLE INC. TO POST A BOND**


PATTERSON BELKNAP WEBB & TYLER LLP
Saul B. Shapiro (SS 5506)
Sarah E. Zgliniec (SZ 0206)
Scott W. Parker (SP 4721)
Catherine A. Williams (CW 0003)
Karen Lim (KL 7611)
1133 Avenue of the Americas
New York, New York 10036
Telephone 212-336-2000
Facsimile 212-336-2222

*Attorneys for Plaintiff*

## TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

I. The Harm to DIRECTV If Wrongfully Enjoined Is De Minimis, Because the Commercials at Issue Were Discontinued Before the Injunction Was Entered .......... 2

II. DIRECTV Has Advanced No Credible Evidence To Support Its Alleged Out-Of-Pocket Expenses .......... 4

III. DIRECTV's Request for Additional Security To Compensate It for "Additional Harm" Is Baseless .......... 6

IV. A Bond of $50,000 Is Appropriate .......... 7

CONCLUSION .......... 9

## TABLE OF AUTHORITIES

## CASES


Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc.,
909 F. Supp. 896 (S.D.N.Y. 1995) ........................................................................5

CSC Brands L.P. v. Herdez Corp.,
191 F. Supp. 2d 1145 (E.D. Cal. 2001).................................................................5

Chambers v. Briggs & Stratton Corp.,
863 F. Supp. 900 (E.D. Wis. 1994)......................................................................7

Doctor's Assocs. v. Distajo,
107 F.3d 126 (2d Cir. 1997)..................................................................................2

Dunkin' Donuts Inc. v. Albireh Donuts, Inc.,
96 F. Supp. 2d 146 (N.D.N.Y. 2000)..............................................................2, 7

Int'l Controls Corp. v. Vesco,
490 F.2d 1334 (2d Cir. 1974)................................................................................2

Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.,
441 F. Supp. 2d 552 (S.D.N.Y. 2006)...................................................................5

Nalco Chem. Co. v. Hydro Techs., Inc.,
795 F. Supp. 899 (E.D. Wis. 1992).......................................................................4

Novartis Animal Health US, Inc. v. LM Connelly & Sons, PTY Ltd.,
2005 WL. 1721038 (S.D.N.Y. July 20, 2005) .......................................................7

Polar Corp. v. Coca-Cola Co.,
871 F. Supp. 1520 (D. Mass. 1994) .......................................................................8

Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc.,
823 F. Supp. 1077 (S.D.N.Y. 1993)........................................................................7

Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.,
83 F. Supp. 2d 1016 (D. Minn. 2000)....................................................................7

## PRELIMINARY STATEMENT

Plaintiff Time Warner Cable Inc. ("TWC") respectfully submits this memorandum of law in opposition to DIRECTV, Inc.'s ("DIRECTV") motion for an order requiring TWC to post a $1 million bond as security to cover alleged harm to DIRECTV in the event that it is determined that DIRECTV was wrongfully restrained by the Court's February 5, 2007 Opinion and Order granting TWC's First Motion for a Preliminary Injunction.

DIRECTV's application for a $1 million bond should be denied. Any potential adverse impact to DIRECTV from a wrongfully-entered injunction is de minimis. DIRECTV had already ceased running the advertisements at issue before the injunction was issued, obviating any harm it might sustain in complying with the injunction. DIRECTV has admitted as much in its public statements; after the injunction issued, DIRECTV publicly stated that "essentially all [the injunction has] done is prevent us from running two spots in their local markets that finished their flights nearly two months ago." Further evidence that DIRECTV is not harmed by the injunction is the decidedly belated nature of DIRECTV's application for a bond: DIRECTV failed to move for a bond until five weeks after argument on the preliminary injunction motion, even after the Court on its own raised the issue of a bond at oral argument when DIRECTV's papers had been silent on the issue. Surely if the injunction posed any real threat of harm, DIRECTV would have sought a bond in a more timely and appropriate manner.

Moreover, the $1 million figure DIRECTV now requests is wildly inflated. DIRECTV only attempts to account for $344,000 of this amount, and even as to that portion, DIRECTV provides no credible evidence – as it must under the law – to demonstrate that these costs are related to the injunction. As to the additional $600,000 security it seeks, DIRECTV pulls this figure out of thin air, claiming that the amount is necessary to cover the harm it suffers

from not being able to run the (false) advertisements it wants to – or, alternatively, to compensate it for the mental energy it requires to comply with the Court's injunction. These "costs" are not grounds for a bond. DIRECTV is free to advertise robustly in any non-false manner it wishes, and to the extent it is "uncertain" about the terms of the injunction, it is free to seek clarification from the Court.

## ARGUMENT

### I. THE HARM TO DIRECTV IF WRONGFULLY ENJOINED IS DE MINIMIS, BECAUSE THE COMMERCIALS AT ISSUE WERE DISCONTINUED BEFORE THE INJUNCTION WAS ENTERED

Although Rule 65(c) of the Federal Rules of Civil Procedure may be expressed in "mandatory terms" (Br. at 3), courts have wide latitude in determining the amount of an appropriate bond. Indeed, courts may deem appropriate a bond in the amount of zero. See, e.g., Doctor's Assocs. v. Distajo, 107 F.3d 126, 136 (2d Cir. 1997) ("Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement 'where there has been no proof of likelihood of harm . . . .'" (citation omitted)); Int'l Controls Corp. v. Vesco, 490 F.2d 1334, 1356 (2d Cir. 1974) (court may dispense with bond where there is no proof of likely harm to the party enjoined); Dunkin' Donuts Inc. v. Albireh Donuts, Inc., 96 F. Supp. 2d 146, 151 (N.D.N.Y. 2000) (no bond necessary where there was no likelihood that defendants would suffer any costs if injunction was wrongfully issued).

Here, an appropriate bond is much closer to zero than to the $1 million that DIRECTV now seeks. DIRECTV ceased the bulk of the enjoined conduct before the injunction was entered. At the January 31, 2007 hearing, DIRECTV told the Court that it had already stopped airing the Revised Jessica Simpson and William Shatner Commercials. (Ex. A to March 29, 2007 Declaration of Saul B. Shapiro ("Shapiro Decl."), Tr. 52.) And on February 5, 2007, the same day that the Court issued the injunction, DIRECTV publicly stated that it would suffer

no harm as a result of the injunction; DIRECTV's spokesman boasted that "essentially all [the injunction has] done is prevent us from running two spots in their local markets that finished their flights nearly two months ago." (Ex. B to Shapiro Decl.) As such, DIRECTV has no out-of-pocket expenses relating to the injunction against the Revised Jessica Simpson and William Shatner Commercials, and there is no likelihood that DIRECTV will suffer any costs or damages if it is later found that these commercials were improperly enjoined.

DIRECTV's dilatory application for the bond is further confirmation that it will not suffer harm as a result of the Court's injunction. Throughout the proceedings, DIRECTV failed to raise, brief, or argue the necessity of a bond – protection it surely would have sought if any real harm were likely. DIRECTV utterly failed to mention the issue of a bond in its January 17, 2007 opposition to TWC's preliminary injunction motion. Despite this omission, at the January 31, 2007 hearing on DIRECTV's motion, the Court gave DIRECTV ample opportunity to argue the appropriate amount of the bond. But in response, DIRECTV made plain that it had given the issue no thought whatsoever:

> THE COURT: [T]o the extent you choose to give me a view of DIRECTV as to what would be appropriate [for] a security, this would be your context and your opportunity. Of course I'm not requiring you to do that, but if you want to address it this would be the time. . . . [W]hat do you want for security?
>
> MR. WILLIAMS: Well, at that point – and I apologize for not being able to give a concrete number because it depends on how many ads DIRECTV needs to modify, depending on the actual language. . . . Your Honor, unfortunately, I feel like if I were to give you a number, it really would be just pulling it out of thin air at this point until we know exactly what is being enjoined and what is currently in the marketplace.

(Tr. 49, 54.) The Court pointed out that Time Warner Cable's proposed order had "been in [DIRECTV's] hands since the motion was made," and that DIRECTV "should have come prepared to talk concretely about these issues." (Tr. 50-51.)

Even after the Court entered the injunction at issue on February 5, 2007, DIRECTV remained silent on the issue of a bond for more than three weeks. Finally, on February 27, 2007, DIRECTV wrote to Time Warner Cable and asked for its consent to a $1 million bond. Time Warner Cable promptly responded to DIRECTV, stating that a $50,000 bond would be more appropriate in this case, and that it would consent to that amount. (Exs. C and D to Shapiro Decl.) DIRECTV then waited nearly two more weeks before filing, at long last, the instant motion. Had the injunction posed any real risk of harm to DIRECTV, it would have acted promptly in seeking appropriate protection. See, e.g., Nalco Chem. Co. v. Hydro Techs., Inc., 795 F. Supp. 899, 901 (E.D. Wis. 1992) ("Notably, the defendants' motion was not filed until nearly two months after issuance of the injunction; this delay, in itself, militates against the imposition of a very large amount for the defendants' security.")

In sum, DIRECTV failed to request a bond for more than two months after TWC first sought the injunction, and made clear to the press and the Court that it had already ceased the bulk of the conduct that was enjoined. For these reasons alone, the Court should reject DIRECTV's sudden and belated request for a $1 million bond.

## II. DIRECTV HAS ADVANCED NO CREDIBLE EVIDENCE TO SUPPORT ITS ALLEGED OUT-OF-POCKET EXPENSES

Notwithstanding these facts, DIRECTV now asserts that it has lost a total of $344,000 in out-of-pocket expenses related to the injunction. DIRECTV claims that it lost its investments of (1) $260,000 for brochures "similar to the website and banner ads enjoined by the Court" with the DIRECTV to "OTHER TV" comparison, to be shipped to "Consumer

Electronics retailers for display in the DIRECTV section"; (2) $80,000 for tear-out sheets that depicted "similar images and advertised DIRECTV's current subscription offer"; and (3) $4,000 to change DIRECTV's website and banner ads. (Br. at 4-5.)

In order to justify a bond covering this amount, DIRECTV has the burden of demonstrating with "credible evidence" the harm it would realistically be expected to sustain in the event of a wrongfully issued injunction. See Bear U.S.A., Inc. v. A.J. Sheepskin & Leather Outerwear, Inc., 909 F. Supp. 896, 910 & n.25 (S.D.N.Y. 1995); Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006). DIRECTV has utterly failed to meet that burden as to these purported out-of-pocket expenses.

The paucity of DIRECTV's showing is striking. DIRECTV claims that it had to reprint certain brochures and tear-out sheets, but provides only scant details about those materials. Notably, DIRECTV even failed to attach samples of those materials, instead asking this Court simply to take it at its word that these documents were "rendered unusable" by the preliminary injunction. (Br. at 5.) Additionally, nothing in DIRECTV's submission excludes the possibility that it might be able to re-use these brochures and tear-out sheets if it is later found that it was wrongfully enjoined.

Moreover, DIRECTV provides no proof whatsoever of its claimed expenditures. It has provided no itemization or listing of any of its claimed costs, and offers the Court no way to test whether the claimed amounts were actually associated with the injunction. See, e.g., CSC Brands L.P. v. Herdez Corp., 191 F. Supp. 2d 1145, 1154 (E.D. Cal. 2001) (denying request for $700,000 bond where defendants offered "no financial analysis" or documentary evidence in support of figure "other than [declarant's] conclusions"). DIRECTV's submission accordingly

falls far short of establishing, with "credible evidence," its out-of-pocket costs in complying with the injunction. (See cases cited supra.)

## III. DIRECTV'S REQUEST FOR ADDITIONAL SECURITY TO COMPENSATE IT FOR "ADDITIONAL HARM" IS BASELESS

In addition to these out-of-pocket expenses, DIRECTV asserts that TWC should be required to post an additional $600,000 bond to protect DIRECTV from "additional harm" related to the loss it calls its "competitive advantage in the marketplace." This is not proper grounds for the entry of a bond.

First and foremost, DIRECTV has included no evidence whatsoever as to the costs associated with this aspect of its application. DIRECTV's declarant does not even attempt to quantify those efforts – either in terms of hours spent, people involved, or the amounts expended. The $600,000 figure DIRECTV attaches to this aspect of its application is wholly unsupported. It simply pulls the number $600,000 out of the air. The Court should reject this request as rank speculation.

Second, DIRECTV claims that TWC's bond should cover the "harm" that DIRECTV suffers as a result of not being able to "demonstrat[e] its superior picture quality over that of cable by means of a graphic depiction" (Br. at 6) overlooks the obvious remedy to this "harm." DIRECTV is entirely free to run truthful advertisements that have not been enjoined by the Court, touting any alleged "competitive advantage" that it believes it may have.

Third, DIRECTV also complains that it suffers from "substantial uncertainty," which results in additional (unquantified) costs and expenses that should be reflected in the amount of the bond. (Br. at 6-8.) The Court's order, however, is perfectly clear, and DIRECTV can easily navigate it by staying away from claims that compare its HD picture quality to cable's. As such, DIRECTV's argument that compliance with the injunction requires "substantially more

review (legal and otherwise) over every advertisement" (Br. at 7) is without merit; a truthful ad should cost no more to produce than a false one.

Apart from being unsubstantiated and unprecedented, these requests are not applicable under the governing law. Legal and marketing review of advertisements is an ordinary business expense, and unless an injunction forces a defendant to incur expenses beyond such ordinary expenses, the bond need not cover the costs of compliance. See Chambers v. Briggs & Stratton Corp., 863 F. Supp. 900, 907 (E.D. Wis. 1994) (bond need not cover cost of action that defendant was already required to take in the normal course); Dunkin' Donuts, 96 F. Supp. 2d at 151 (bond need not cover defendants' costs in coming into compliance with franchise operating requirements).

## IV. A BOND OF $50,000 IS APPROPRIATE

In response to DIRECTV's February 27 letter requesting a $1 million bond, TWC responded that it would be willing to agree to a bond in the amount of $50,000. That figure is generous under the facts here. Given the strength of TWC's claim, and given that DIRECTV has been enjoined only from running false (not all) advertisements, a $50,000 bond (at most) is appropriate here. See, e.g., Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc., 83 F. Supp. 2d 1016, 1028 (D. Minn. 2000) (rejecting request for $1 million bond; "given the strong likelihood that Surdyk's will succeed on its false advertising claim and the fact that the court's order will prevent MGM from publishing potentially deceptive advertisements only, the court believes that the bond should be set at a much lower figure of $50,000."); Novartis Animal Health US, Inc. v. LM Connelly & Sons, PTY Ltd., 2005 WL 1721038, at **5-6 (S.D.N.Y. July 20, 2005) (issuing $25,000 bond for trademark case under Lanham Act); Stern's Miracle-Gro Prods., Inc. v. Shark Prods., Inc., 823 F. Supp. 1077, 1095 (S.D.N.Y. 1993) (issuing $25,000 bond for trademark case

under Lanham Act); Polar Corp. v. Coca-Cola Co., 871 F. Supp. 1520 (D. Mass. 1994) (issuing $50,000 bond for false advertising claim under Lanham Act).

## CONCLUSION

For these reasons, the Court should reject DIRECTV's unsupported request for a bond of $1 million, and order TWC to enter a bond of no more than $50,000.

New York, New York
March 29, 2007

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

By: s/ Saul B. Shapiro
Saul B. Shapiro (SS 5506)
Sarah E. Zgliniec (SZ 0206)
Scott W. Parker (SP 4721)
Catherine A. Williams (CW 0003)
Karen Lim (KL 7611)
1133 Avenue of the Americas
New York, New York 10036
Telephone: 212-336-2000
Facsimile: 212-336-2222

*Attorneys for Plaintiff*

Of Counsel:

Michael W. Quinn, Esq.