ORIGINAL

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 1 6 2007
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TIME WARNER CABLE, INC.,

                Plaintiff,

-against-                   No. 06 Civ. 14245 (LTS)(MHD)

DIRECTV, INC.,

                Defendant.

## OPINION AND ORDER

APPEARANCES:

| | |
|---|---|
| PATTERSON, BELKNAP, WEBB & TYLER<br>  By: Saul B. Shapiro<br>      Sarah E. Zgliniec<br>      Scott W. Parker<br>      Richard Jackson<br>      Karen Lim<br>1133 Avenue of the Americas<br>New York, NY 10036 | QUINN EMANUEL<br>  By: Michael E. Williams<br>865 S. Figueroa St., 10th Flr.<br>Los Angeles, CA 90017<br><br>      -and-<br><br>  By: Marc L. Greenwald<br>      Jessica Rose<br>51 Madison Avenue, 22nd Floor<br>New York, NY 10010 |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |

LAURA TAYLOR SWAIN, United States District Judge

Copies mailed picked up by counsel
Chambers of Judge Swain 4.16.07

Plaintiff Time Warner Cable, Inc. ("Plaintiff" or "TWC") brings this action, asserting false advertising, deceptive business practices and breach of contract claims against Defendant DIRECTV, Inc. ("Defendant" or "DIRECTV"), pursuant to Section 43(a) of the Lanham Act, 15 U.S. C. § 1125(a), §§ 349 and 350-a of the New York General Business Law, and the common law. The Court has jurisdiction of the federal statutory claims raised in this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and has supplemental jurisdiction of the related state law claims pursuant to 28 U.S.C. § 1367.

Plaintiff moves for a second preliminary injunction[1] enjoining DIRECTV from broadcasting a television commercial that allegedly makes false statements relating to the high definition ("HD") television services offered by DIRECTV and "cable." TWC contends that the challenged commercial falsely represents that DIRECTV's HD capacity (including the number of channels offered in HD) will soon be greater than cable's, and also makes false representations regarding the pricing of DIRECTV's HD services. The Court has considered thoroughly the parties' written evidentiary and argumentative submissions, as well as the oral arguments of counsel, heard on March 26, 2007. This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rules of Civil Procedure 52 and 65. For the reasons that follow, Plaintiff's preliminary injunction motion is denied.

---

[1] Earlier this year, the Court granted Plaintiff's application for a preliminary injunction barring the dissemination of certain DIRECTV television and internet advertisements. See Time Warner Cable, Inc. v. DIRECTV, Inc., No. 06 Civ. 14245 (LTS), 2007 WL 412498 (S.D.N.Y. Feb. 05, 2007).

## FINDINGS OF FACT

Familiarity with the general background and procedural history of this matter is presumed. See Time Warner Cable, Inc. v. DIRECTV, Inc., No. 06 Civ. 14245 (LTS), 2007 WL 412498 (S.D.N.Y. Feb. 05, 2007). The Court's findings as to the factual issues material to its determination of the pending motion are as follows.

TWC challenges a DIRECTV commercial recreating a scene from the movie Back to the Future in which the character Doc Brown, who is played by the actor Christopher Lloyd in both the movie and the advertisement, sends a car driven by the character Marty McFly into the future. The commercial has both a 30-second version and a 15-second version (collectively, the "Back to the Future commercial" or "the commercial"). In the 30-second version, Mr. Lloyd's character realizes he forgot to tell Mr. McFly to get DIRECTV HD when he returns to the future, and states that "[t]hey already have all the best channels, and soon they'll have three times more HD capacity than cable!" After Mr. Lloyd concludes speaking, a narrator's voice states: "for a future of 150 HD channels, get DIRECTV." During the narration and the conclusion of the commercial, a graphic appears, which reads "Starting at $29.99/mo. Everyday price." (February 6 Declaration of Patrick Song ("Song Decl."), Exh. A.) The 15-second version is similar in most respects material to this motion practice, with the exception that the narrator states: "for the best in HD, get DIRECTV."

Both versions of the commercial include small-print language displayed at the end which, among other things, states that the commercial is "based on Bank of America Equity Research Report May 2006," and that the number of channels is subject to available HD

programming. In the revised[2] version of the commercial, this small-print language also states that HD programming carries an additional fee on top of the price quoted.

TWC argues that the commercial makes three false claims: that DIRECTV will soon have more than three times the HD capacity than cable (the "capacity claim"), that DIRECTV already has the all the best channels in HD (the "quality claim"), and that DIRECTV's HD services are available starting at $29.99 per month (the "pricing claim").

DIRECTV has proffered evidence that it is relatively inexpensive for operators such as DIRECTV to add HD capacity via securing additional satellite slots or launching more powerful satellites. The Court finds that DIRECTV can increase its HD channel capacity to approximately 98 HD channels as early as September 2007 through the launch of a new satellite (DIRECTV 10) from the Baikonur Cosmodrome in Kazakstan. (Declaration of James Butterworth ("Butterworth Decl.") ¶ 8.) In addition, its capacity will be increased to 150 HD channels when it launches a second satellite (DIRECTV 11) later this year. Although the platform from which DIRECTV 11 is to be launched from suffered some damage that has delayed its launch, DIRECTV has identified other launch options that would allow it to proceed without significant delay. (Id. ¶¶ 10-13.)

Cable providers such as TWC can also increase network capacity for HD programming by utilizing various technologies and methods, including limited analog bandwidth reclamation, selective broadcast of MPEG4, node splitting and switched broadcast. (Declaration

---

[2] DIRECTV indicated in its opposition papers that it had revised the commercial, and represented at oral argument that the revised version is the only one still on the air. Thus, for purposes of this injunction motion, the Court will focus on the revised version.

of Ronald E. Boyer ("Boyer Decl.") ¶ 5.) TWC agrees with the Bank of America Report's finding that, by use of these methods, cable operators should be able to accommodate more than 100 HD networks withing the next three to five years and that, by using all of these methods simultaneously, "a[] [cable] operator . . . could deliver another 100 HD channels, bringing the total to 200." (Id., citing to Bank of America Report 2, 24-25.)

## CONCLUSIONS OF LAW

TWC seeks an injunction barring, among other things, the dissemination of the Back to the Future commercial by DIRECTV in any market in which TWC operates and the dissemination of any other advertisement claiming that DIRECTV will have greater HD capacity than TWC or cable providers generally, claiming that DIRECTV offers all of the best channels in HD, or making false claims as to the price of DIRECTV's HD service in any market in which TWC operates. TWC also seeks an order requiring DIRECTV to disseminate corrective advertising.

Section 43(a) of the Lanham Act, 15 U.S.C.A. § 1125(a)(1) (West 1998),[3] which establishes a federal cause of action for false advertising, provides, in relevant part, that:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce . . . any false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or

---

[3] Because, as the parties acknowledge, the standards for analysis of Plaintiff's New York state law claims are the same as those for analysis of the Lanham Act claims in all relevant respects, the following discussion is equally applicable to both sets of claims. See Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 221 F. Supp. 2d 410, 413 n. 2 (S.D.N.Y. 2002); Novo Nordisk A/S v. Becton Dickinson and Co., 997 F. Supp. 470, 472 n. 1 (S.D.N.Y. 1998).

geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

A party seeking preliminary injunctive relief bears the burden of showing that it will suffer irreparable harm in the absence of the relief, and either (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the moving party's favor. See King v. Innovation Books, a Div. of Innovative Corp., 976 F.2d 824, 828 (2d Cir. 1992) (citation omitted).

As to the merits, TWC argues that all three of the challenged claims are literally false.[4] "Where [an] advertising claim is shown to be literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public." McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co., 938 F.2d 1544, 1548-49 (2d Cir. 1991) (internal quotation marks and citation omitted). TWC also makes a so-called "establishment claim," arguing that the capacity claim is not supported by the cited May 2006 Bank of America Report ("the Report"). See Castrol, Inc. v. Quake State Corp., 977 F.3d 57, 63 (2d Cir. 1992). To prevail on an establishment claim, where the challenged advertisement "explicitly or implicitly represents that tests or studies prove its product superior, plaintiff satisfies its burden

---

[4] In false advertising cases, courts will presume irreparable harm where the moving party "demonstrates a likelihood of success in showing literally false defendant's comparative advertisement which mentions plaintiff's product by name." Castrol, Inc. v. Quake State Corp., 977 F.3d 57, 62 (2d Cir. 1992). As in its first preliminary injunction motion, TWC argues that, as to any given market in which it has a presence, a reference to "cable" necessarily constitutes a reference to TWC. See Time Warner Cable, Inc. v. DIRECTV, Inc., No. 06 Civ. 14245 (LTS), 2007 WL 412498 (S.D.N.Y. Feb. 05, 2007).

by showing that the tests did not establish the proposition for which they were cited." Id. at 63.

Likelihood of Success on the Merits[5]

Literal Falsity

*The Capacity Claim*

Citing steps that it is taking to increase the practical availability of its bandwidth for HD programming, along with the delay in the launch schedule for DIRECTV 11, TWC argues that DIRECTV's claim that it will soon have superior HD capacity is literally false. TWC ultimately carries the burden of establishing, by a preponderance of the evidence, that this claim is false. In the context of the instant motion practice, TWC's burden is to demonstrate its likelihood of success on the merits of this claim or, at a minimum, that there are sufficiently serious questions going to the merits of the claim to make them a fair ground for litigation. TWC has done neither.

TWC offered evidence that it either currently has or soon will have larger bandwidth powers in a handful of markets across the country. However, the contested claim is that DIRECTV will "soon" have more than three times the HD capacity of cable. As DIRECTV's counsel pointed out during oral argument on this motion, the Report makes specific references to HD capacity at the end of 2007, a time frame that is well within any reasonable concept of

---

[5] Neither party addressed in its briefs the issue of whether or not Plaintiff could establish that there are sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in Plaintiff's favor rather than establishing a likelihood of success on the claims. In any event, for the reasons that follow, the Court concludes that Plaintiff would be unable to meet either of these standards.

"soon." TWC has not provided evidence sufficient to support a finding that it is likely to be able to prove that the superior capacity claim is false as to the parties' respective capacities as of year end 2007. The evidence proffered by TWC is, at best, a series of assumptions and predictions and, even when concrete plans are outlined, such as plans for analog reclamation in the Staten Island, New York, market, TWC was unable to state affirmatively that the reclaimed bandwidth would be used for increasing HD capacity as opposed to other uses. (See Transcript of Oral Argument at 55.) As noted earlier, in its own papers, TWC agrees with the Report's assessment that cable could have a 100-200 HD channel capacity within the next three to five years, but this time frame clearly falls after the end of 2007, which was a time frame for which the Report presented specific capacity information as to the two types of service, and the time frame on which DIRECTV focused its arguments defending the capacity claim. Plaintiff bears the burden on this motion, and it has not demonstrated a likelihood of success on the merits of its literal falsity claim regarding DIRECTV's claim to soon have superior HD capacity, nor has it raised sufficiently serious questions going to the merits to make them a fair ground for litigation with respect to this claim.

### *The "All the Best Channels" Claim*

TWC argues that DIRECTV's claim that it "already ha[s] all the best channels..." is also literally false, asserting that DIRECTV cannot possibly be considered to carry "all the best" HD channels because it does not provide a satellite HD signal for certain network programming in certain markets.

A statement of opinion that cannot reasonably be seen as stating or implying provable facts about a product is not actionable under the Lanham Act. See, e.g., Groden v.

Random House, Inc., 61 F.3d 1045, 1051 (2d Cir. 1995). The question of what channels are "best" is inherently subjective. The Court need not attempt to weigh the parties' respective arguments as to the merits of DIRECTV's quality claim, because the obvious subjectivity of any assessment of the relative quality of channels makes it clear that the task would be futile. Indeed, TWC concedes that an assertion that DIRECTV has "the best channels" would be non-actionable puffery. DIRECTV's assertion that it has "all" the "best" channels does nothing to make the puffery more concrete - if "the best" channels cannot be identified, as TWC concedes, it is difficult to see how a universe of "all the best" channels could be identified. TWC has not met its burden of showing a likelihood of success, or sufficiently serious questions going to the merits to make them a fair ground for litigation, with respect to this quality claim.

*The Pricing Claim*

During the briefing of this motion, DIRECTV revised the commercial to include a disclaimer at the bottom of the screen indicating that its HD service is available for an additional fee. TWC nonetheless argues that the pricing claim remains literally false.

It is, of course, Plaintiff that has the burden of showing a likelihood of success, or sufficiently serious questions going to the merits to make them a fair ground for litigation, regarding the argument that this pricing claim is false. As DIRECTV asserted at oral argument, the revised commercial states that the HD services are available for an additional fee on top of DIRECTV's basic $29.99 package. In considering false advertising claims, the Court is to bear in mind that "fundamental to any task of interpretation is the principle that text must yield to context," and that the Court must "consider the advertisement[s] in [their] entirety and not engage in disputatious dissection. The entire mosaic should be viewed rather than each tile separately."

S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 238 (2d Cir. 2001). Viewing this commercial as a whole, the Court concludes that the pricing claim is not false. The viewer is confronted with text stating that the price "*start[s] at* 29.99" (emphasis added); the existence of a disclaimer of some sorts is clearly visible at the bottom of the screen. Although the small print of the disclaimer may leave some clarity to be desired,[6] the pricing information provided in the commercials is not false, and Plaintiff has not met its burden of demonstrating a likelihood of success on the merits or sufficiently serious questions going to the literal falsity of the pricing claim.

Establishment Claim

While TWC accepts as true the Report's statements for purposes of this motion practice, it argues that DIRECTV's selective omissions of certain portions of the Report, including the Report's assessment that the cable industry can relatively easily increase HD capacity and the fact that the Report concedes that HD capacity will not be a "game changer" or something that should dramatically influence the competitive dynamic among providers,

---

[6] Although the parties did not cite it for this proposition, the Court feels it appropriate to distinguish this case from that of SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., 906 F. Supp. 178 (S.D.N.Y. 1995), where the district court noted that "a footnote or disclaimer that purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of the claims." Id. at 182 (internal quotation marks and citations omitted.) There, the district court found that a footnote disclaimer accompanying a chart in an advertisement was insufficient to remedy the clear and unequivocally false message the chart conveyed. Here, however, the Court finds that the disclaimer is not inconspicuously located, as it is clearly visible at the bottom of the screen, and that viewers will not tend to overlook it.

establishes that the Report does not support DIRECTV's claim that it will soon have three times more HD capacity than cable.

The challenged commercial does not, however, focus on the Report's assessment of the long-term HD capacity of the respective competitors, nor does it purport to convey the Report's assessment of the competitive significance of HD capacity disparities. Rather, the commercial claims that DIRECTV will "soon" have more than three times the HD capacity of cable. The Report, which was released in May of 2006, states clearly that cable operators are "close to capacity constrained today at about 30 HD channels," whereas DIRECTV "has the capability of offering . . . 150 national HD channels within the next two years," and that DIRECTV has outlined plans to have those 150 HD channels by year-end 2007. (Report at 2, 4, 7.) The Report also makes the statements that "DIRECTV is likely to have the most national HD capacity for the foreseeable future." (Id. at 4.) The first page of Report includes a graph estimating that, by the end of 2007, DIRECTV should have 150 channels of HD programming capacity while cable operators will have approximately 30-40. (Id. at 1, Figure 1.)

TWC has failed to demonstrate any prospect of success in claiming that the cpacity claim is unsupported by the Report. Again, the commercial claims that DIRECTV will "soon" have more than three times the HD capacity of cable, and the end of the current year, 2007, is certainly "soon," and the Report does include predictions that at that time, DIRECTV will have somewhere around 150 channels, while cable will have fewer than 40. 150 is, of course, more than three times 40, the Report's highest estimate of cable's capacity.

This case is distinguishable from cases cited by TWC in support of its argument that the Report does not support the commercial's capacity claims. For example, in SmithKline

Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharmaceuticals Co., No. 01 Civ. 2775 (DAB) 2001 WL 588846 (S.D.N.Y. June 01, 2001),[7] the district court held that the necessary implication of a commercial depicting an announcer standing in front of a Tums antacid sign while delivering the message repeatedly that Pepcid Complete relieves less than half of the heartburn episodes, without revealing that Pepcid Complete in fact performed better than the antacid to a statistically significant degree, was the unambiguous and concededly false claim that Tums provided faster relief than Pepcid Complete. Id. at *12-13. However, the Report flatly states that DBS operators (like DIRECTV) "should have a big leg up over cable operators in offering national HDTV networks over the next several years." (Report at 1.)

Further, though TWC argued at both oral argument and in its papers that the commercial compared TWC's HD capacity at the time of the Report with DIRECTV's future capacity, as noted earlier, the Report itself made predictions for both cable and DIRECTV for year end 2007, which is within the bounds of "soon." Plaintiff has failed to meet its burden of showing that the Report "did not establish the proposition for which [it was] cited," namely that DIRECTV will soon have more than three times the HD capacity of cable. See Castrol, 977 F.2d at 63.

Irreparable Harm

Because the Plaintiff has failed to establish a likelihood of success on its claims, or sufficiently serious questions going to the merits to make them a fair ground for litigation, the

---

[7] This cited opinion, though bearing the same party names as the case in footnote 6, is a different opinion from a different case before a different judge.

Court need not examine irreparable harm in this instance, nor, of course, the issue of corrective advertising.

## Conclusion

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is denied, as is Plaintiff's related request for corrective advertising.

SO ORDERED.

Dated: New York, New York
April 16, 2007

LAURA TAYLOR SWAIN
United States District Judge